Good morning, Judge Gould. Good morning, Judge O'Scanlan and Judge Bain. Judge Gould will be participating from his chambers in Seattle. We will hear the cases and the sequence in which they appear on the docket sheet, starting with Rose v. Beverly Health. Counsel? Good morning, Your Honors. Good morning. If it pleases the Court, I'd like to start by introducing myself, please. I'm sorry. My name is John Ormond. I'm the attorney for Charlotte Rose. If it pleases the Court, I'd like to start my discussion of this case with the judicial district court opinion that I think are of importance. On page 10 of the district court decision, at the record, page 413, line 23, the district court judge characterized Mrs. Rose's actions as the mistake. As a what? The mistake. The mistake. So clearly the district court concluded that Mrs. Rose had made a mistake. She had not made a misrepresentation. And that's significant? Well, I think that under the Ninth Circuit authority of In re Cori, that judicial estoppel should not be based upon mistake or inadvertence. The case of In re Cori is cited by the United States Supreme Court in the case of New Hampshire v. Maine for that very principle. And it seems to me that if the district court concludes that Mrs. Rose did nothing more than make a mistake, then at that point the district court is required to exercise its discretion with that fact as the first part of the analysis. And now, isn't it accurate to say that your client did have a right to sue letter at the time, so she wasn't unaware of the potential claim that she had? I think the attorney at that time had the right to sue letter. The attorney in the wrongful termination case had the right to sue letter. I'm not sure the record shows that it came to her. Sometimes we – I'd have to check the record on that, Your Honor. Sometimes we don't. Isn't that notice imputed to the client for this purpose? Well, I don't think that there's any doubt that the wrongful termination attorneys knew that she had a claim. There's no doubt about that. The question is whether or not when she filled out her bankruptcy forms, she knew that she had an unliquidated contingent claim. And I think that the – Which failed to be disclosed on the bankruptcy documents. Correct. Correct. And I think that what happened here is once the judge decided that she made a mistake and that there were inconsistent positions, he felt that under Hamilton, he didn't really have any discretion at all. And so he didn't exercise any discretion. He didn't analyze her position in life at the time that she completed her bankruptcy forms. He didn't analyze her declaration. He didn't – I mean, he didn't say that her declaration that she didn't realize was incredible for any reason. He didn't analyze her situation in life at all or her situation at the time she completed the bankruptcy court. So in our view, it's really not a case of abuse of discretion on the part of the district court judge. In our view, it's really a case where the district court judge looked at Hamilton and didn't believe under Hamilton he had the discretion to go deeper than the idea that there were inconsistent positions taken. And I think that the Hamilton case, although the language of that has not been parsed too much, I think that the language of that case really suggests that the inconsistency has to be deliberate falsehood. And there's lots of cases cited in the points and authorities that we filed at the district court level about that. And the difference between manipulation of the court and innocent misrepresentation has to be taken into account. And I don't think that the district court ever took that into account. And so I think that what you should do at the very minimum is send it back to the district court on that issue if you find that there's jurisdiction and really ask him to exercise his jurisdiction. He writes pages in his order about his analysis of the things that the attorneys said, the attorneys tried to do to put it in context and maybe make it better for her, but he didn't really analyze her and what she did and when she did it and why. And I think that that's important that you do and that somebody does at some point, because if you read the order real closely, it was never really done. And I think that that's her right under the law to have judicial discretion exercised regarding her conduct, her personal conduct, not some abstract question of whether or not she did or didn't do something that was inconsistent. All right. Well, now, you mentioned jurisdiction. Why don't we get to that? The Federal jurisdiction issue, why was it error, I suppose, your view is it was error to hold that the your client was covered by the collective bargaining agreement? Before I forget, I'd like to reserve three minutes, Your Honor. You may do so. Just watch the clock. Okay. Well, because there's absolutely no proof she was ever a member, an actual member of the working force that's covered by the collective bargaining agreement. Well, is it accurate to say that she voted to decertify the union? She put her name on a petition to decertify the union. Well, isn't that a pretty significant indicia, indicium of membership? I don't think so. One can't vote to decertify if one is not a member. That's true. But one can believe one is a member and sign a petition to decertify a union, and that vote counts for zero. I mean, it's a legal insignificant, it's legally insignificant if a janitor's not covered by a collective bargaining agreement votes to decertify the collective bargaining agreement that covers the nurses. He can sign it, he can think, somebody can hand him a petition and say, please sign this, and he can say, be happy to help you, I will sign it. That doesn't mean that he really thinks that he is a member. It just thinks that he can, it's okay for him to sign it. Somebody asked him to do it, he might do it. Mr. Orman, Judge O'Scanlan asked you whether a vote to decertify indicated union membership, and you immediately jumped to the issue of whether a petition to decertify meant membership. I'm sorry for that, Your Honor. That was clever. No, no, I didn't mean to be clever, honestly. I'm not. But I want you to answer the question, was there a vote by this person, Ms. Rose, to decertify, and can you explain to us how, if there was a vote, a nonmember could vote? First of all, there wasn't a vote. The only thing she ever did is sign a petition to decertify the union. Okay. And there was no vote. Is there anything in the record indicating whether her name was stricken in terms of qualifying the petition? No. And I'm not even sure there was ever an actual vote. I'm not sure it ever went to NLRB or anything for a process like that. So if you look at the collective bargaining agreement, her – if her job position is described in there at all, it's described as a position that's excluded. Her job is as a supply clerk. Clerical positions are excluded from the terms of the collective bargaining agreement. Well, isn't there an issue with respect to a 30-pound lifting limitation? Well, that was her disability, yes. Well, typically, a purely clerk position would not involve lifting heavy objects or consistent use of lifting, particularly 30 pounds. Well, Your Honor, that's part of the problem here is that I think that under the law, in order to put someone in a union, legally speaking, in a court of law, some examination has to be made of their job duties, what they do, why they do it, who supervises them, and where they do it. And there's case authority cited about that in our briefs. I think it's the Walla Walla case. And it seems to me that the important thing that wasn't done here by the party that thought that there was federal jurisdiction on the basis that she was a member of a union is do exactly what you are searching to do. You don't have a record to do that. You want to say, well, gee, what about this 30-pound limitation? Isn't it logical, therefore, that she's not really a clerk? Well, I might say to you, well, we've got clerks in our office that pick up boxes of paper all the time and load the Xerox machine. That doesn't mean they're not clerks. That just means they have to pick up a box of paper. So here we are at the United States court of appeal arguing, if you will, about whether or not there's facts here sufficient to conclude that, well, she really wasn't a clerk. Well, that's not what we're here to do. What we're here to do is decide whether or not the party that claimed that she was a member of the union presented sufficient evidence to the trial court so that the trial court's conclusion about that can be held to be accurate. And I don't think that they went to that trouble. And you have to ask yourself the question of whether or not she was a clerk. It's more, isn't it? I mean, this is a 12b-6 motion. Yes, Your Honor. So the – on the jurisdictional point, the party with the burden of proof of showing that there is Federal jurisdiction must submit proof which establishes not a probability of jurisdiction, but that jurisdiction exists as a matter of law. Correct. And your position is that the record does not sustain that burden of proof. Correct. And I would like to add that the – there's a wage scale that's at Exhibit B to the collective bargaining agreement itself. And her job is not described on that wage scale. So number one, clerical positions are excluded. Number two, her job's not described on the wage scale. And all you have is a couple of – you have one signature by her, I think, and a submission to the NLRB by the employer, none of which are binding on anybody. And so it's – it just seems that if you're going to decide Federal jurisdiction on such flimsy basis, you know, I guess anything will work. And I think that's what they did here, is they took the flimsiest thing that they had and put it out there and didn't go to the trouble of even having her supervisor say or the payroll clerk say, we paid her union scale because – or she was treated as an employee with union membership because, and therefore, and so on, and go ahead with it. And I think that's the real problem. The timeliness issue, Your Honor, I think that if you look at the points and authorities that we cited below, our briefs, again, that's a really thin, thin way to do removal. I think the substantive question in the case on removal boils down to whether or not the interpretation – the CBA has to be interpreted, and it doesn't boil down to anything about the decertification position at all – petition at all. And they should have known and did know, in fact, if they believe that she's a union member, they knew that when the complaint was filed. If that forms the basis for Federal jurisdiction, then they knew that when the complaint was filed. The e-mail that came across the Internet really didn't add anything or change anything and shouldn't be used as a pretext to get past the problem that they didn't file the removal with in the first 30 days. And I'm below my three minutes, Your Honor. I'd like to go on. You may reserve your – the remainder of your time. We'll hear from the other side. Charles Rusch for the defendant. Beverly. Mr. Rusch. Could you please address the question we were last discussing with Mr. Orman, which is what evidence is in the record which compels the trial court to have found that Rose was covered by the collective bargaining agreement? Also, you might discuss whether all persons covered by the collective bargaining agreement need be members of the union or not, or is this a representative agency shot? I have two, Your Honor. If I could, I'll take the second part of your inquiry first. It certainly is fairly clear law that you do not have to be a member of the union or be paying dues to be covered by the collective bargaining agreement. The board establishes – the National Labor Relations Board establishes the proprietary – the proper unit. And in doing so, every individual who is in that bargaining unit, in the positions, is covered by the bargaining unit, regardless of whether or not they decide to join the union or become a member. So membership and or payment of dues is irrelevant, and the citation of authority on that, Your Honor, is Steel v. Louisville Railroad. It's U.S. Supreme Court Case 323-192. Has that been cited in your brief? Yes. Yes, it is. That's fine. And it stands for the proposition that the union represents all of the employees, regardless of whether they're members of the union at all, if they're in the And then one other side point, I guess I would also raise, Your Honor, is that this issue on the preemption is part of the removal. It is not part of the 12b-6 alternative summer judgment motion. It's the removal pleading that was filed. So just to make sure that we're clear on that. In terms of the evidence that exists, the plaintiff was a central supply clerk. Under the terms of the way this company does business, that is a service and maintenance employee position, and the evidence to support that is the fact that on October 8th of 2003, her name was provided to the board as part of the card check certification vote process. This was not a normal election, go-through-the-campaigning process vote. It was a card check certification vote, and her name was submitted by the company as one of the people in the bargaining unit to the National Labor Relations Board. Was that submitted by the company? Yes, it was, Your Honor, to the board. Then we also have two decertification petitions that were filed by the union, against the union, one in August, one in December of 2004, and when the company had to supply the listing of the bargaining unit members and the positions, Ms. Rose's name was submitted on both occasions relative to that. So what we know is it's very clear the company believed that she was covered by the collective bargaining agreement that had been certified by the board. And then we also know that Ms. Rose believed she was covered by the bargaining unit because she signed the decertification petition in June of 2004. So what we have is the company on repeated instances indicating that she's covered by the CBA, Ms. Rose indicating that she believes she's covered by the CBA, and so in essence, I believe she's covered by the CBA. It's only plaintiff's counsel at the current time who does not believe that she was covered by the CBA. The other thing that we also have is that... Counsel, Judge Gould, I have a question. How do you respond to the appellant's counsel's argument that clerical workers were excluded? As I understood him, he's saying they were excluded from the bargaining unit. The clerical workers that are excluded from the bargaining unit are the people who are the upfront people doing actual clerical work with the executive director. This is a supply clerk position, and it is part of the service and maintenance position. And when you look, Your Honor, at the exclusions in Appendix A of the collective bargaining agreement, you see no exclusion at all for the central supply clerk. The other positions that are excluded are specifically set forth there. Now, I know what we probably, and I've seen it in the briefs, obviously, plaintiffs argue that, well, her name isn't specifically or position is not specifically included, but that's not how collective bargaining agreements are done. They give broad ranges and classes of jobs, not particular specific jobs, and then they exclude certain specific positions. So go a little slower. Your position is that the clerical workers who are excluded under the collective bargaining agreement are specifically listed as the job categories in the collective  I didn't follow what you asked me, Your Honor. The clerical workers who are excluded from the collective bargaining agreement are specifically indicated or stated in the collective bargaining agreement as excluded. Is that your position? I couldn't say that, Your Honor, without going back and looking at the specific exclusion. I'd have to look at that. Well, then what were you telling Judge Gould? What I was indicating is that in the language in Appendix B or, I'm sorry, Appendix A, that there are specific positions that are excluded. And her position of central supply clerk is not excluded. Well, that's what I was asking. In Appendix A, there are lists of positions which are specifically excluded. That's correct. Central supply clerk is not one of them. That is correct. That's your position, right? That is correct. Okay. That's in Appendix A to the collective bargaining agreement. Yes. I'm sorry. I didn't understand the question. Do you want to? I did not proceed. I have satisfied your inquiries on that. I would like to respond to some of the first things that were raised in counsel's arguments, if I could, and that is that the Court did not conclude that there was a mistake or concluded, I'm sorry, that there was a mistake in this instance. But not turning to judicial estoppel. Yes, Your Honor. And why the Court was correct on judicial estoppel. Is that correct? Yes, Your Honor. All right. And the representation that was made in argument is that the Court concluded that the plaintiff made a mistake here. But I think if you look at Judge Ishii's opinion on page 12, he specifically indicates that there is no evidence in the present case of innocent intent. Plaintiff's self-serving declaration notwithstanding, the plaintiff has followed precisely the course of conduct she would have followed had she desired to conceal her potential claim from the bankruptcy court so as to secure the benefit of any settlement or judgment for herself without the need to use the proceeds to pay her debts. So Judge Ishii certainly did not conclude that this was just a mistake. He didn't go so far. He did subsequently say, I'm not saying there's any malfeasance, but he specifically said the course of conduct here doesn't reflect an innocent intent. And that's on the last page of his report. What is the record citation to where you were reading? Thank you. 415? 414. And if I may, Your Honor, on the same page, when counsel has indicated that there was not consideration of the Court's discretion, but when you look at what Judge Ishii did, he considered all of the ‑‑ each of the factors set forth in the Hamilton decision. And so he went through the analysis in Hamilton to decide was there an inconsistent position taken, did they convince the Court of their position, and is there going to be a benefit derived as a result of that. He went through that analysis, which is the exercise of his discretion. The Hamilton case is very close to this case and controls, we believe, the Court's decision, and so did Judge Ishii, obviously. Factually, the cases are very, very similar. And if I could ‑‑ Anything further, counsel? I just have one more point, if I could. And that is on the issue of the timing of the removal. The plaintiffs have argued that our removal was too early in this case, but I think that when you look at the citation of the Harris case, this Court's opinion in the case, it is very, very similar factually to our case in that originally what happened is that jurisdiction was not clear on the face of the complaint, on the four corners of the complaint, and the Court's analysis and decision in that case was to look and decide that defendant's 30 days to remove under 1446B is triggered initially either on the face of the complaint, which I don't think we have any dispute here, on the face of the complaint, there was no Federal court jurisdiction apparent. So then you look at the second clause of 1446B, and it indicates that you have to have some other motion pleading or other paper. And in Harris, the Court looked at that, and the Court utilized specifically a letter that had been sent from the plaintiff's counsel to the defendant's counsel, in essence indicating that the other defendants in the case were no longer going to be pursued. And the Court specifically indicated in Harris that that was the trigger for the other paper. In this case, what we have is an e-mail from the plaintiff's counsel confirming Ms. Roe's signature on the decertification petition, and that is the first time we had any kind of evidence from the plaintiff that she was covered by the collective bargaining agreement. And the Harris case makes clear that the defendant's subjective knowledge or subjective belief as to Federal jurisdiction is not the inquiry. And the defendants are not required to go outside the four corners of the complaint to hunt for Federal court jurisdiction. But once the plaintiff has done some type of a voluntary act to confirm that jurisdiction, the 30 days run. And so as a result of receiving that e-mail, which is just like the letter that the plaintiff's counsel sent in Harris, then the 30 days began to run and the case was removed within the 30 days. Roberts. Thank you, counsel. Thank you, Your Honor. Mr. Armand, you have some reserve time. Your Honor, if the decertification petition has the quality and the weight which you give to it, then the decertification petition then is the knowledge that the defendant has regarding union membership. The e-mail that was sent by counsel adds nothing to that evidentiary-wise, and so they had it. And if they thought that that gave them Federal jurisdiction, then they should have acted then. If they sent an admission or take a deposition or something like that, well, maybe it has the quality of the other paper. But I think the authority is clear that an e-mail doesn't. And I want to move beyond that because that's well addressed in the brief. I think that the quote on 414 that we've been focusing on, where Judge Ishii says that he is not concerned with whether or not her intentions were innocent, is probably the most telling statement that he makes about what he did. He was not interested in whether she was guilty or innocent. He says that. But he says that. Read that very closely. It's in the middle of the page on 414. He basically says, I do not want to analyze, I will not analyze, whether she felt, how she thought, what her intentions were. And if you have a standard that says that you can't impose judicial estoppel unless you see there's something beyond inadvertence and mistake, then what does that tell you? It tells you you have to analyze the intent of the person because intent is just a subcategory of intent of, excuse me, mistake is a subcategory of intent. In other words, I did not intend, therefore it was a mistake. And I think that that's pretty simple. I think we have to analyze the difference between mistake of law and mistake of fact. If the plaintiff is mistaken as to the facts, that is a permissible mistake. But if she knows what she's done, that she's got the claim, and she is mistaken about the law, that does not excuse her at all. Isn't that what Hamilton says? I don't think it's clear cut like that, Your Honor. I really don't. I got another one. Pardon me? I'll read it again. OK. And I forgot to make a point in my opening remarks, Your Honor, about the issue of whether or not the CBA is invoked at all. And I think that the authority out there really is that, and that's why I sent the letter, which is that in a case like this that boils down to motive of the employer, the employer either had the discriminatory motive or the employer didn't have the discriminatory motive. And if he did not have the discriminatory motive, he's not liable. And even if he has a good faith belief in the right to do what he did, it doesn't matter whether the CBA gives him that right or not, as long as his belief is reasonable. And I don't want to parse the language too much, but that's why I cited that Villiaromo case to you, because basically that's what you've said, is that there's no question that you don't have to analyze the CBA, and the judge doesn't have to analyze the CBA, and you go back to the lingual decision, which is the United States Supreme Court case that says that if it's a factual inquiry, whether they were right or they were wrong, you don't have to look at the CBA and analyze it at all. It's not invoked. Therefore, you don't have jurisdiction. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will hear next Rouse v. U.S. Department of State.
judges: O'scannlain, Gould, Bea